W. S. EDWARDS v. G. C. HUNTER AND WIFE, LINA HUNTER.

(Filed 10 April, 1957.)

**1. Highways § 11—**

The procedure for the establishment of a neighborhood public road, as well as the procedure to establish discontinuance thereof, is by special proceeding before the clerk, and although an interlocutory injunction in connection with the proceeding under the statute may be issued only by the judge, the Superior Court does not have original jurisdiction of the proceeding. G.S. 136-67, G.S. 136-68.

**2. Same—**

This action was instituted to restrain defendants from blocking an alleged neighborhood road, constituting a segment of an old abandoned highway, situate on defendants' land and sought to be used by plaintiff, owner of adjoining land. The complaint did not allege that the road was a neighborhood public road or any basis for the establishment of a neighborhood public road, but did allege facts upon which the action could be maintained to establish an easement appurtenant. *Held:* Demurrer to the jurisdiction on the ground that the proceeding was in the original jurisdiction of the clerk, was properly overruled.

**3. Appeal and Error § 50—**

While the findings of fact, as well as the conclusions of law, are reviewable on appeal from the granting of an interlocutory injunction, it will be presumed that the findings of fact made by the hearing judge are correct, and the burden is on the appellant to assign and show error.

**4. Injunctions § 8—**

A temporary order issued in the cause should be continued to the hearing upon plaintiff's showing of a *prima facie* right to the primary equity when the relief sought will be irrevocably lost if the *status quo* is not preserved to the hearing.

**5. Same—**

Plaintiff sought a permanent injunction to restrain defendants from blocking a private roadway on their lands. The findings established that the use of the road by plaintiff was not necessary for ingress and egress to his land, but was a matter of mere convenience, based upon the right to an easement appurtenant. *Held:* The continuance of a temporary restraining order to the hearing involved only the relative conveniences and inconveniences to the respective parties, and the dissolution of the temporary order rested largely in the discretion of the hearing judge and will not be disturbed on appeal.

**6. Same—**

The findings of the court, upon the hearing of a motion to show cause why a temporary restraining order should not be continued to the hearing, are not determinative or relevant when the issues are determined at the trial.

APPEAL by plaintiff from order of *Huskins, Resident Judge,* entered 9 February, 1957, in Chambers, from YANCEY.

A permanent injunction, restraining defendants from blocking an alleged neighborhood road and from otherwise interfering with the travel of plaintiff, his agents and employees, thereon, is the sole relief demanded by plaintiff.

Admittedly, defendants have blocked plaintiff's access to their land, defendants averring that since about 1920 the alleged road has been nonexistent and that defendants have had adverse and exclusive possession of their land.

The hearing was on affidavits, including the verified pleadings, to determine whether an *ex parte* temporary restraining order should be continued in effect until the trial. At the conclusion of the hearing, the court vacated the temporary restraining order. His order to this effect was based on the findings of fact set out below.

## "FINDINGS OF FACT"

"1. That upon the call of the case for hearing, defendants challenged the jurisdiction of the Court for that plaintiff's remedy, if he has one, is by special proceeding before the Clerk.

"2. That plaintiff owns and has owned since 1907 a 210-acre tract of land with 110 acres thereof east of Cane River; that his residence and the remainder of the tract are west of the river; that there is no bridge across the river connecting the two portions of plaintiff's farm, but for many years plaintiff has forded the river at a point near his barn except during high water; that the land east of the river is used for extensive farming and for raising sheep and cattle.

"3. That defendants own a 108-acre tract of land located in its entirety on the east side of Cane River and bounded on the north by that portion of plaintiff's land which is on the east side of the river.

"4. That prior to the year 1920 a public road led from Tennessee, passed plaintiff's residence, turned a southeasterly direction, crossed Cane River by a ford (hereafter called 'northern ford'), continued southerly up the river through plaintiff's land and on through the land now owned by defendants, crossed the river again by ford (hereafter called 'southern ford') and joined what is now U. S. Highway 19E.

"5. That about 1920 the aforesaid public road was relocated to what is now U. S. Highway 19W, running entirely on the west side of Cane River from plaintiff's residence to the point where it connects with U. S. Highway 19E.

"6. That from 1920 to 1941, plaintiff reached his lands east of Cane River by fording the river at the northern ford near his barn and proceeding along said old roadbed on his own land; that shortly after 1920 a wire fence was built across the old road on the boundary line between plaintiff's land and the lands now owned by defendants; that since 1920 the public has not used that portion of said old road which is located on plaintiff's land east of the river and has not used that portion of said old road which formerly led from plaintiff's southern boundary line (where the wire fence is located) through defendants' land, but said segment of the old road grew up in shrubs and undergrowth which was eventually cleaned off by the then owners and the old roadbed placed in grass or cultivation along with the rest of the field.

"7. That in 1941 the State Highway and Public Works Commission built a bridge across Cane River near the southern ford in connection with improvements to a road leading from said bridge and U. S. 19W into the King Community; that at about the same time said Commission improved, graveled and placed under maintenance a short segment of the old road in question which leads from the King Community Road (at or near the bridge herein referred to) to a dwelling house located on defendants' land several hundred yards from plaintiff's southern boundary line where the wire fence is located.

"8. That the portion of said old road from the point where it crosses Cane River at the northern ford (near plaintiff's residence and barn which are located on the west side of the river and on the present hard-surfaced U. S. 19W) and running east of the river through plaintiff's land to the wire fence between plaintiff and defendants, serves only the plaintiff in that it affords him ingress and egress to his land and to his barns located thereon east of the river; that same does not serve a public use nor as a means of ingress or egress for one or more families; that the portion of said old road that formerly existed through defendants' land (from the wire fence on the line to the King Community Road) has not been used as a road by anyone since about 1920, except as stated in paragraph 11.

"9. That from about 1920 to 1955 plaintiff used the northern portion of the old road located on his own lands for his private use but did not during that time use any portion of the old road that formerly existed through the lands of defendants; that since 1955 the plaintiff, with permission of defendants, has traveled at times through defendants' land on or near the old roadbed where the old road formerly existed—crossing the bridge built in 1941 at the southern ford and then going north from the King Community

Road through defendants' land to his own; that recently such permission was withdrawn and notices erected by defendants notifying plaintiff to keep off defendants' land, whereupon plaintiff asserted a right to travel over defendants' land and brought this action to restrain defendants from interfering with plaintiff's free passage over said alleged neighborhood public road.

"10. That there is not now and has not been since 1947 an occupied dwelling house on plaintiff's land east of Cane River.

"11. That that portion or segment of the old road which formerly existed east of Cane River between the northern ford and the King Community Road does not serve as a necessary means of ingress to and egress from an occupied dwelling house on plaintiff's land; that the southern end of it for a very short distance is now under maintenance and leads to a dwelling on defendants' land, and there is no dispute between the parties with respect to the use thereof by anyone desiring to go to and from said dwelling.

"12. That the segment of old road formerly existing over defendants' land which plaintiff now seeks to travel (a) has not been taken over and placed under maintenance, (b) has been abandoned by the State Highway and Public Works Commission, and (c) does not serve as a necessary means of ingress to ·and egress from any occupied dwelling house."

The court overruled defendants' plea to its jurisdiction; and, exercising jurisdiction, entered the said order. Plaintiff excepted and appealed. By appropriate exceptive assignments of error he challenges findings of fact 5, 6, 8, 9, 11 and 12, and also the entry of said order.

*R. W. Wilson and Fouts & Watson for plaintiff, appellant.*

*C. P. Randolph, G. D. Bailey, and W. E. Anglin for defendants, appellees.*

BOBBITT, J. The statutory procedure for the establishment of a neighborhood *public* road as defined by G.S. 136-67 is by special proceeding instituted before the clerk of the Superior Court in the county where the property affected is situate. G.S. 136-68. *Woody v. Barnett,* 235 N.C. 73, 68 S.E. 2d 810; *Clinard v. Lambeth,* 234 N.C. 410, 67 S.E. 2d 452; *Grady v. Grady,* 209 N.C. 749, 184 S.E. 512. Too, this is the appropriate procedure to establish the "discontinuance" of a neighborhood public road. *In re Petition of Edwards,* 206 N.C. 549, 174 S.E. 505. When this procedure is applicable, the fact that an interlocutory injunction, affecting the status of the parties *pendente lite,* may be issued only by the judge, does not divest the original jurisdiction of the clerk in respect of the determination of the proceeding on its merits.

If it appeared from the complaint that the sole purpose of this action was to establish a neighborhood *public* road as defined by G.S. 136-67, defendants' motion to dismiss on the ground that the statutory procedure therefor vests original jurisdiction in the clerk would be well taken. However, the segment of old road in controversy is not referred to in the complaint or in plaintiff's affidavits as a neighborhood *public* road, but as a neighborhood road; nor does plaintiff refer to any of the provisions of G.S. Ch. 136, Art. 4.

As pointed out by *Barnhill, J.* (later *C. J.*), in *Speight v. Anderson,* 226 N.C. 492, 39 S.E. 2d 371: "There is no legislative sanction, or provision for the establishment, of a neighborhood road, a term ordinarily used to designate a private way which serves a neighborhood as an outlet to a public road."

Moreover, the complaint fails to allege that the segment of old road now in controversy remained "open and in general use as a necessary means of ingress to and egress from the dwelling house of one or more families," or that it was "laid out, constructed, or reconstructed with unemployment relief funds under the supervision of the Department of Public Welfare" (*Raynor v. Ottoway,* 231 N.C. 99, 56 S.E. 2d 28), or that it served "a public use and as a means of ingress or egress for one or more families;" or that it served "as a necessary means of ingress to and egress from an occupied dwelling." Indeed, since 1920 the public road, at the location of present U. S. Highway 19W, has passed or run through the portion of plaintiff's property on the west side of Cane River on which his residence is located. Hence, regardless of the label, the facts alleged by plaintiff do not bring the segment of old road now in controversy within the meaning of neighborhood *public* road as defined by G.S. 136-67. Compare *Clinard v. Lambeth, supra.*

Before passing from this phase of the case, it should be noticed that the first statute creating and defining neighborhood public roads, which, as amended, is now codified as G.S. 136-67, was enacted in 1933. Public Laws of 1933, Ch. 302. This 1933 statute referred to portions of the public road system of the State which had not been taken over and placed under maintenance or had been abandoned by the State Highway Commission but *were then open and in general use by the public.*

In this action, plaintiff's right to use the segment of old road now in controversy depends upon whether he has a private easement appurtenant to his lands. If plaintiff is to establish such private easement, it would seem that he must do so either by adverse user under claim of right for twenty years or more or as abutting owner on principles considered in *Davis v. Alexander,* 202 N.C. 130, 162 S.E. 372; *Long v. Melton,* 218 N.C. 94, 10 S.E. 2d 699; *Mosteller v. R. R.,* 220 N.C. 275, 17 S.E. 2d 133.

True, upon an appeal from an order granting or refusing an interlocutory injunction, the findings of fact as well as the conclusions of law are reviewable by this Court. *Deal v. Sanitary District*, 245 N.C. 74, 95 S.E. 2d 362; *Roberts v. Cameron*, 245 N.C. 373, 95 S.E. 2d 899. But there is always the presumption that the findings of fact made by the hearing judge are correct and the burden is on the appellant to assign and show error. *Lance v. Cogdill*, 238 N.C. 500, 78 S.E. 2d 319; *Huskins v. Hospital*, 238 N.C. 357, 78 S.E. 2d 116; *Clinard v. Lambeth, supra.* After considering all the affidavits, including the verified pleadings, the findings of fact, which are supported by plenary evidence, are approved by this Court.

We need not decide whether plaintiff, upon construction in 1920 of the new public road on the west side of Cane River, had a private easement to use as theretofore the section of old road on the east side of Cane River between the "northern ford" and "southern ford." Assuming, for present purposes, that plaintiff had such private easement in 1920, the findings of fact establish defendants' plea in bar, namely, that from 1920 to 1955 plaintiff made no use of the segment on defendants' land, but that defendants have had adverse and exclusive possession thereof and that plaintiff's use of defendants' land since 1955, at or near the location of the old roadbed and elsewhere, was by permission of defendants. *Lee v. Walker*, 234 N.C. 687, 68 S.E. 2d 664; *Gault v. Lake Waccamaw*, 200 N.C. 593, 158 S.E. 104; *Hunter v. West*, 172 N.C. 160, 90 S.E. 130.

While we refrain from discussing either the evidence or the findings of fact in detail, there is one feature to which we call attention. Until the bridge *near* the "southern ford" was built in 1941, the plaintiff, in order to reach his land on the east side of the river, had to cross at the "northern ford" or at the "southern ford." There is no evidence or contention that the "southern ford" provided a more satisfactory crossing. Hence, it would seem unlikely that plaintiff until 1941 or thereafter had any reason to proceed by the longer route to reach his land on the east side of the river. Uncontradicted evidence shows that the section of old road on the east side of the river extended from the "northern ford" across (1) the land of plaintiff, (2) the land now owned by defendants, (3) the land of Monroe King, (4) the Whittington farm, and crossed the "southern ford" at the Mary Byrd farm, thence to the Asheville-Burnsville Highway.

Plaintiff contends that he has offered evidence tending to show that after the new road was constructed in 1920 he continued to use the old road along the east bank of the river and evidence of other facts in conflict with the court's findings. Therefore, he contends, even though the court considered the evidence offered by defendants to be of greater weight, the conflict of evidence as to material facts should suffice to

entitle him to a continuance of the temporary restraining order to the final hearing.

The rules applicable upon a hearing to determine whether a temporary restraining order should be continued to the final hearing, stated in *Lance v. Cogdill, supra, Huskins v. Hospital, supra,* and *Clinard v. Lambeth, supra,* need not be repeated. In certain actions, such as an action to restrain the cutting of a shade tree, or an action to restrain the destruction or disposition of certain property, etc., if the temporary restraining order is vacated, irreparable injury results if the plaintiff's cause of action is sound; for no matter how good his proof at the final hearing, the plaintiff will not be able to obtain the relief sought and to which he was entitled.

Here, if, at the final hearing, plaintiff can establish his right to use the portion of the old road that crosses defendants' land he will obtain judgment to that effect. Under the circumstances, it could hardly be said that either plaintiff or defendants would be irreparably injured by the granting or refusal of the interlocutory injunction. Rather, the relative conveniences and inconveniences which the respective parties may suffer from the granting or refusing of the interlocutory injunction would seem determinative; and, when so based, the decision must rest largely in the discretion of the hearing judge. *Lance v. Cogdill, supra; Huskins v. Hospital, supra.*

If a conflict of evidence, standing alone, were determinative, the decision would turn solely on whether the action was *brought* by plaintiff to restrain the blocking of the road or by defendants to restrain plaintiff from trespassing on their lands. Such a consideration is insufficient to control the decision of a court of equity. We think the evidence and findings of fact fully warrant the order of the court below.

Of course, the findings of fact made by the court below are not determinative or relevant when the issues are determined at the trial. *Lance v. Cogdill, supra; Huskins v. Hospital, supra.*

In a case such as this, if plaintiff is entitled to the relief sought, it would seem that his better course would be to proceed to trial at first opportunity rather than by appeal from an order vacating the temporary restraining order.

Affirmed.